UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD S., JR., )<br>)<br>       **Plaintiff** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security,*[1] )<br>)<br>       **Defendant** ) | No. 1:20-cv-00244-JDL |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff argues, among other things, that the ALJ erred by assessing a mental residual functional capacity (RFC) unsupported by substantial evidence. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 11-16. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent with this decision. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Act through June 30, 2019, Finding 1, Record at 25; that he had the severe impairments of abdominal disorder – impaled object/trauma, obesity, and post-traumatic stress disorder (PTSD), Finding 3, *id*.; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could engage in occasional posturals, could never climb ladders, had to avoid concentrated exposure to vibrations and other workplace hazards, could have occasional interactions with the public, co-workers, and supervisors, could perform simple and routine tasks, and would require a position where he could sit for 20 minutes, then stand for 10 minutes, before returning to a seated position while remaining on task, Finding 5, *id*. at 27; that, considering his age (40 years old, defined as a younger individual, on his alleged disability onset date, June 2, 2016), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 34; and that he, therefore, had not been disabled from June 2, 2016, his alleged disability onset date, through the date of the decision, June 28, 2019, Finding 11, *id*. at 35.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

       The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

The plaintiff underwent a psychological evaluation by Donna Gates, Ph.D., in March 2017 at the request of Disability Determination Services (DDS). *See* Record at 365-68. Dr. Gates summarized her findings as follows:

> When asked what would make it difficult for him to work, [the plaintiff] said, "Chronic pain and the physical limitations from having been impaled by rebar." He has a good work history with a mild reactive depressed mood. Based on the available information, it appears that he is capable of following work rules, relating well to others, and using good judgment for jobs within his vocational ability. He can complete detailed instructions and manage a moderate level of work-related stress as he is physically able. He can maintain his personal appearance. Emotional functioning appears to be within normal limits for his life stressors and he is sad, frustrated, and worried about his future. Any limitations based on a physical disability are deferred to the evaluating physician.

*Id.* at 367. She went on to diagnose the plaintiff with adjustment reaction with depressed mood and PTSD features. *See id.*

In April 2017, Brian Stahl, Ph.D., a nonexamining consultant with DDS, evaluated the plaintiff's disability claims at the initial level of review. *See id.* at 102-11. After reviewing the plaintiff's medical records – including Dr. Gates's report – Dr. Stahl concluded that, although the record supported a diagnosis of adjustment disorder with depression, the limitations associated with that condition were nonsevere. *See id.* at 103-04, 107. Dr. Stahl, therefore, did not assess the plaintiff's mental RFC. *See id.* at 107.

After the plaintiff's claims were denied at the initial level, another DDS nonexamining consultant, Leigh Haskell, Ph.D., evaluated his claims at the reconsideration level of review in May 2017. *See id.* at 124-34. Like Dr. Stahl, Dr. Haskell found that, although the record supported a diagnosis of adjustment disorder with depression, Dr. Gates's findings demonstrated that the "associated functional limitations [were] non-severe." *Id.* at 129. Accordingly, Dr. Haskell did not assess the plaintiff's mental RFC. *See id.*

In January and February 2019, the plaintiff underwent a neuropsychological evaluation by Bonnie Creech, Ph.D. *See id.* at 550-57. Dr. Creech administered several tests to assess the plaintiff's neurobehavioral status and found that "he was not impaired or in the borderline range on any" of the tests but that his performance was indicative of anxiety and PTSD. *Id.* at 555. Based on her evaluation, Dr. Creech diagnosed the plaintiff with PTSD and traumatic brain injury (TBI). *See id.* at 556. She noted that the plaintiff did "not have any apparent cognitive problems related to his TBI or PTSD" but "had prominent symptoms of PTSD" and was "socially anxious and guarded[,]" and that his PTSD might be interfering with his sleep and attention. *Id.* at 554-55. She went on to recommend that the plaintiff (i) organize information into meaningful categories for better encoding, (ii) use timers and alarms to remind him to complete tasks, (iii) keep his items and reminders in consistent places, (iv) try medication to help with his inattention, anxiety, and depression, (v) seek treatment for his PTSD, and (vi) use various deep breathing techniques to help with his sleep. *See id.* at 556.

The ALJ determined that the plaintiff had the severe impairment of PTSD and that, although "diagnostic tests and examinations were generally found to be unremarkable[,]" the plaintiff had moderate limitations in (i) understanding, remembering, or applying information, (ii) interacting with others, (iii) concentrating, persisting, or maintaining pace, and

(iv) adapting/managing himself. *Id.* at 25-26, 33. In determining the plaintiff's RFC, the ALJ limited him to work involving only simple and routine tasks and occasional contact with the general public, supervisors, and co-workers. *See* Finding 5, *id.* at 27. The ALJ explained that he gave "great weight" to the assessments of both Drs. Gates and Creech, whose findings were "consistent with . . . the overall evidence of record" and "consistent with, and form[ed] the basis of," his mental RFC assessment. *Id.* at 32. He gave "little weight" to the opinion of Dr. Haskell. *Id.*[3]

      The plaintiff argues that the mental limitations assessed by the ALJ are not supported by substantial evidence because neither Dr. Gates nor Dr. Creech assessed such limitations. *See* Statement of Errors at 12-14. He points out that Dr. Gates "essentially said that [his] mild mental impairments did not restrict his ability to perform basic mental work activities[,]" and that Dr. Creech offered analysis and recommendations but did not "explain what [he] can still do despite his impairments." *Id.* at 12-13. He contends that because Dr. Gates's opinion does not support the ALJ's assessed limitations, and the ALJ was not qualified to translate "Dr. Creech's neuropsychological assessment results into functional limitations[,]" the ALJ must have necessarily interpreted raw medical evidence to arrive at his mental RFC. *Id.* at 15.

      The commissioner, on the other hand, argues that the ALJ assessed a mental RFC that was more favorable to the plaintiff than the evidence would otherwise support. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 8. She contends that the ALJ adopted Dr. Gates's opinion but permissibly adopted even greater limitations. *See id.* at 8, 11. She also argues that Dr. Creech's opinion consisted of little more

---

[3] The ALJ did not mention Dr. Stahl's opinion. *See* Record at 32. Nevertheless, because Dr. Stahl's opinion is substantively identical to that of Dr. Haskell, *compare id.* at 107 *with id.* at 129, it is safe to assume that the ALJ was similarly unpersuaded by Dr. Stahl's opinion.

than "common-sense suggestions" that were not indicative of any specific limitations and that the ALJ adequately explained why he did not impose greater limitations.  *See id.* at 9-11.

The plaintiff has the better argument.

To begin with, despite his purported reliance on Dr. Gates's assessment, the ALJ's mental RFC assessment is facially inconsistent with Dr. Gates's findings.  Indeed, as a practical matter, the ALJ could not have given any weight to Dr. Gates's assessment that the plaintiff was capable of, among other things, "following work rules, relating well to others," and "complet[ing] detailed instructions[,]" Record at 367, when limiting the plaintiff to work involving only "simple and routine tasks" and "occasional interactions with the public, co-workers, and supervisors[,]" Finding 5, *id.* at 27.

The ALJ also purported to rely on the assessment of Dr. Creech.  *See id.* at 32.  Unlike Dr. Gates, Dr. Creech explicitly diagnosed the plaintiff with PTSD based on extensive psychological testing that, according to her, revealed "prominent symptoms of PTSD."  *Id.* at 554. Among those symptoms, Dr. Creech found that the plaintiff was "socially anxious and guarded" and could "become oppositional or resentful."  *Id.*  She also acknowledged that the plaintiff's PTSD could be negatively affecting his sleep and attention.  *See id.* at 555.  These findings more closely track those of the ALJ, suggesting that the ALJ rejected Dr. Gates's milder findings in favor of Dr. Creech's later ones.

Nevertheless, it appears that after accepting Dr. Creech's PTSD diagnosis, the ALJ relied on his own lay interpretation of her findings regarding the plaintiff's PTSD-related symptoms to determine the plaintiff's work-related functional limitations.  This is problematic because, as both the commissioner and the plaintiff note, Dr. Creech did not offer an opinion as to the plaintiff's work-related limitations.  *See* Statement of Errors at 13-14; Opposition at 9 & n.2.  And contrary

to the commissioner's arguments, *see* Opposition at 9, common sense would not have enabled the ALJ to translate Dr. Creech's findings into specific work-related limitations.  Common sense, for example, does not explain how the ALJ determined that limiting the plaintiff to only occasional contact with the public, co-workers, and supervisors adequately accounted for Dr. Creech's observations that the plaintiff was "socially anxious and guarded" and could become "oppositional and resentful."  Record at 554; *cf. Joseph D. P. v. Saul*, No. 1:20-cv-00146-NT, 2021 WL 838888, at *3 (D. Me. Mar. 5, 2021) (rec. dec., *aff'd* Mar. 24, 2021) (rejecting the commissioner's argument that common sense would permit an ALJ to translate an agency examining consultant's vague findings that the claimant could lift and carry light objects and did not bend well into specific work-related limitations).

In light of these concerns, I am not persuaded by the commissioner's suggestion that the ALJ adequately explained why he did not impose greater limitations when he cited the generally unremarkable mental health findings in the record and the plaintiff's activities of daily living.  *See* Opposition at 9-10; *Lacey A. L. v. Saul*, No. 1:19-cv-00126-GZS, 2020 WL 748645, at *5 (D. Me. Feb. 14, 2020) (rec. dec., *aff'd* Mar. 3, 2020) (noting that an "ALJ's reliance on largely normal mental status examinations and activities of daily living did not fill the gap" after the ALJ relied on his own interpretation of raw medical evidence to assess the claimant's mental RFC (citation and internal quotation marks omitted)).  There may be a way to reconcile the ALJ's mental RFC assessment, but the ALJ's decision – which offers very little by way of explanation – does not provide such a reconciliation.  *See* Record at 32-33; *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) ("[A] reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm,

if at all, on the basis of a rationale *actually articulated* by the agency decision-maker." (emphasis added)).

Instead, from the limited explanation provided by the ALJ, it seems that he rejected the expert RFC opinions of record based on later-submitted neuropsychological evidence and then impermissibly relied on his own interpretation of that evidence to arrive at his mental RFC assessment. In such circumstances, the ALJ cannot be fairly said to have assessed a mental RFC that is more favorable to the plaintiff than the evidence would otherwise support. *See, e.g., Jamie A. V. v. Saul*, No. 1:19-cv-00386-JDL, 2020 WL 2838546, at *6 (D. Me. June 1, 2020) (rec. dec., *aff'd* July 23, 2020) (holding that when an ALJ "determined *sub silentio* that the" expert RFC assessments of record "were in some respects inadequately restrictive" and deviated "from them on the basis of his lay interpretation of" later-submitted evidence, his RFC findings could not "fairly be described as more favorable than the evidence would otherwise support"); *Hadley v. Berryhill*, No. 1:16-cv-00568-JAW, 2017 WL 4876781, at *5 (D. Me. Oct. 29, 2017) (rec. dec., *aff'd* Apr. 9, 2018) (noting that where the ALJ "failed to make clear to a reviewing court how she weighed" expert opinions, and it was possible she had fully discounted them and relied on her own lay assessment of the medical evidence, her assessment of the plaintiff's mental RFC could not be considered "more favorable to the [claimant] than the evidence would otherwise support"). As such, remand is warranted. *See Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018) ("[W]hen failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway," reversal and remand are warranted.).

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of October, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge